(159 App. Div. 401.)

### GREENBERGER v. QUEENS COUNTY WATER CO.

(Supreme Court, Appellate Division, First Department.   December 5, 1913.)

WATERS AND WATER COURSES (§ 203*)—ENTRY—DETACHMENT OF WATER METER
—RATES—FAILURE TO PAY.

Where a contract for the furnishing of water to plaintiff's premises provided for the payment of a $15 deposit before a meter would be installed and the water turned on, and that water would be furnished at the minimum rate of $15 per annum, and plaintiff after making the deposit mistook the minimum rate for the deposit and refused to pay the additional $15 for the supply furnished when due, the water company's entry on the premises to disconnect the appliances was not a trespass.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 289, 290–299; Dec. Dig. § 203.*]

Appeal from Appellate Term, First Department.

Action by David Greenberger against the Queens County Water Company.   From a determination of the Appellate Term affirming a judgment of the Municipal Court in favor of plaintiff, defendant appeals.   Reversed and dismissed.

See, also, 157 App. Div. 921, 142 N. Y. Supp. 1120.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

F. B. Lord, of New York City, for appellant.

L. F. Glaser, of New York City, for respondent.

DOWLING, J.   Appeal from a determination of the Appellate Term affirming a judgment of the Municipal Court, Borough of the Bronx, Second District, entered upon a verdict of a jury in favor of plaintiff in the sum of $500 for damages sustained by reason of a trespass.   On September 20, 1911, plaintiff was in possession as lessee of the premises No. 20 Dodge avenue, Rockaway Beach, borough of Queens, New York City, and found that the water supply therein had been discontinued.   He was advised that the defendant was the party supplying water to the premises and went to its offices and there made application for the furnishing of water.   He states that he said: "I want to get water.   I moved in to-day."   Thereupon defendant's representative said: "All right; it will cost you $15."   Thereupon plaintiff was handed a printed form of agreement, which he signed, and which was signed on behalf of the company, constituting the contract between them for the supply of water to the premises.   Plaintiff then paid $15 and obtained a receipt therefor, whereupon the representative said, "The next day you will have water."   The following day the water was turned on (apparently through a ³/₄″ meter), and it was continuously supplied to plaintiff until March 13, 1912.   On that day the defendant's representatives entered the premises of the plaintiff and renewed a demand which had been made on the preceding day for a payment of $15, upon the failure to pay which the meter was taken out and the supply of water discontinued.   It is for this entry that the plaintiff sues.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thereafter, about June 1, 1912, plaintiff paid the sum of $15 and applied for a $1/2''$ meter instead of a $3/4''$ meter, receiving back $5 of the original deposit paid by him, so that the total amount paid amounted to $25. The controversy between the parties arose from the plaintiff's failure to comply with the terms of his contract with the defendant. When he made his application for the supply of water to the premises occupied by him, he signed the written contract before referred to, which was also executed by the defendant, by virtue of which he was to make the following payments:

First. A deposit of not less than $10, which in his case was fixed at $15. This he paid. With respect to this deposit, the contract provides as follows:

"Such deposit will be returned to the depositor on satisfactory proof that his account has been settled in full, and either that the meter has been removed and the water shut off, or that application by a new owner or lessee has been duly made for a continued supply, and accepted by the company."

As plaintiff never brought himself within any of these conditions, the deposit was properly in the custody of the company until June 1, 1912, when he made an application for a smaller meter, turned back the old receipt, and received a new receipt for $10 and $5 in money; the $10 being the deposit upon a $1/2''$ meter.

Second. The contract also contained a clause plainly printed, by which it was provided:

"After meters are attached the company's charges will be made upon the following minimum rates:  *  *  *  Through a $3/4''$ meter, $15 per annum."

It was as to this provision that the controversy arose, and plaintiff was entirely in the wrong in his refusal to comply therewith. At the time when he made application he was not asked for the $15 minimum rate, which was payable after the meter was installed; but not having paid for water of any kind, a bill was sent him, and properly so, in the sum of $15. This bill was upon a printed form used by the company in sending out its accounts, bore date of December 19, 1911, and informed plaintiff that he was in arrears for water furnished from June 1, 1911, to date, $15. It also notified him that if settlement was not made on or before December 23, 1911, the service would be disconnected. Under the contract between plaintiff and defendant, the minimum rate was payable in advance on June 1st of each year. Of course, the inclusion of that printed date in the bill was an error, since plaintiff had not been in possession of the premises until September; nevertheless under his contract the minimum rate of $15 was payable the day after the meter was attached, which was about September 22, 1911. Plaintiff did not pay this bill, but he went to the defendant's office and asked them how much water he had actually used, whereupon they advised him that water had been supplied to the amount of $5.80 since the time the meter had been connected. Under the contract between the parties, measured water rates, that is, charges for water furnished through the meter, were payable monthly. Plaintiff conceived the idea that he was being charged for water that had been used by the previous tenant of the premises occupied by him. That

this was not the fact he knew as far back as December, 1911, upon which occasion he called with his bill for $15 at the defendant's office, and was there told by Webster, the clerk in charge, that the minimum rate was due from the time he went into his premises, on or about September 20th, and the clerk changed the date from June 1st, to September 20th, and handed the bill back to plaintiff. Greenberger then inquired how much he owed for water, whereupon Webster looked up the books and told him he owed $5.80 for water actually furnished and also the $15 payment required from all applicants. Plaintiff offered to pay the $5.80 and refused to pay the $15, and it was owing to his continued and persistent refusal to pay this money that the service was finally discontinued and the water meter taken out. Under the contract between the parties, the superintendent, or proper agent of the company, was given the right of access at reasonable hours to all parts of such premises to which water was supplied by the company. The company also had the right to discontinue its service upon 24 hours' notice, if any bill for water was not paid within five days after same was due. Furthermore, the consumer was not to be entitled to be supplied with water by the company until he had paid all sums due from him.

From these considerations it appears that the plaintiff by his unreasonable and unlawful refusal to comply with the terms of the contract between him and defendant, in failing to pay the minimum rate of $15 required to be paid by him after the meter had been attached, had defaulted on the contract, and the defendant was justified in entering upon his premises and removing the meter and discontinuing any further supply of water. The fact that the plaintiff mistook the minimum rate of $15 for the deposit of $15 furnishes no reason why he was entitled to a supply of water upon the payment of $15 instead of $30, as the contract required. The relations between the parties were purely contractual, and the plaintiff was the only one guilty of a breach thereof. It follows that no trespass was committed by the representative of the defendant in entering upon the plaintiff's premises, and that, as plaintiff has failed to establish any cause of action therein, the motion to dismiss at the close of the plaintiff's case should have been granted. This view of the case renders unnecessary a discussion of the errors committed in the receipt of evidence and in the charge to the jury, as well as in the refusals to charge, many of which were of sufficient gravity to have alone justified a reversal of the judgment.

The determination of the Appellate Term and the judgment of the Municipal Court will therefore be reversed, with costs to the appellant, and the complaint of the appellant herein dismissed, with costs. All concur.